THOMAS, Judge.
In December 2006, Michael C. Traffan-stedt entered into an agreement to settle a workers’ compensation claim against his employer, Dover Corporation d/b/a Heil Corporation (“Heil”) (“the 2006 settlement agreement”). The 2006 settlement agreement provided that future medical benefits would be left open. In 2011, Traffanstedt and Heil entered into a settlement agreement as to his future medical benefits (“the 2011 settlement agreement”), which was submitted to the trial court for approval, as required by Aia.Code 1975, § 25-5-56, a part of the Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq. The trial court did not approve the 2011 settlement agreement.
Traffanstedt again sought approval of a settlement agreement as to his future medical benefits in early 2013 (“the 2013 settlement agreement”). A hearing before the trial court for its .approval of the 2013 settlement agreement had been set for February 6, 2013. Traffanstedt died on February 5, 2013, for reasons unrelated to his work-related injury, Thus, the hearing did not take place.
Liberty Mutual Insurance Company (“Liberty Mutual”), the workers’ compensation insurance carrier for Heil, had issued a check for $70,000 in satisfaction of the 2013 settlement agreement. The check provided that it could not be negotiated before court approval of the 2013 settlement agreement. After Traffan-stedt’s death, Liberty Mutual refused to honor the check. Thus, on October 16, 2013, the administrator of Traffanstedt’s estate, Pat Tate, sued-Heil and Liberty Mutual, seeking a judgment declaring that Liberty Mutual and Heil-were bound by the 2013 settlement agreement and alleging breach of contract.
Tate moved for a summary judgment, and Liberty Mutual filed a cross-motion for a summary judgment; Heil adopted Liberty Mutual’s arguments at the summary-judgment hearing. Liberty Mutual and Heil argued that Tate’s claims were barred by the exclusivity provisions of the Act, see Ala.Code 1975, §§ 25-5-52 and 25-5-53, and that they were not bound by the 2013 settlement agreement because that settlement agreement was. not made valid by court approval before Traffan-stedt’s death. After the trial court-considered the arguments of the parties, it entered a summary judgment in favor of Liberty Mutual and Heil. Tate appealed to our supreme court, which transferred the appeal to this court because, it determined, *470 the appeal fell within this court’s subject-matter jurisdiction. See Ala.Code 1975, § 12-3-10.
On appeal, Tate argues that the trial court erred in concluding both that the action was barred by the exclusivity provisions of the Act and that the 2013 settlement agreement was not valid because it had not yet been approved by the trial court. Tate contends that a settlement agreement in a workers’ compensation action is treated like any other contract, see Jones v. Ruth, 31 So.3d 115, 118 (Ala.Civ.App.2009) (construing a settlement agreement “like any other contract” to determine what claims the agreement released); thus, he contends, the 2013 settlement agreement was binding on the parties even though it had not yet been approved by the trial court when Traffanstedt died. To support his contention that the trial court’s approval of the settlement before Traffan-stedt’s death was not necessary to make the settlement valid, Tate chiefly relies on Nationwide Mutual Insurance Co. v. Wood, 121 So.3d 982 (Ala.2013), in which our supreme court determined that two insurers could not unilaterally withdraw from a settlement of a minor’s tort claims after the minor’s death despite the fact that the trial court had yet to approve the settlement.
Liberty Mutual and Heil argue that the trial court correctly determined that the 2013 settlement agreement was not enforceable. They contend that the Act does not permit recovery of medical benefits by a deceased employee’s estate and that the exclusivity provisions of the Act prevent Tate from seeking to enforce the 2013 settlement agreement outside the provisions of the Act. Liberty Mutual and Heil also contend that a workers’ compensation settlement agreement is not treated like other settlement agreements. Sager v. Royce Kershaw Co., 359 So.2d 398, 400 (Ala.Civ.App.1978) (“Section 25-5-56 clearly removed settlement of workers’] compensation claims from the ambit of principles applicable to the settlement and release of ordinary personal injury claims.”).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to , the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “[Substantial evidence is evidence of sueh weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
The statutory provisions-relevant to our discussion are all a part of the Act. Sections 25-5-52 and -25-5-53, commonly referred to as the exclusivity provisions of the Act, prohibit any action -seeking workers’ compensation benefits through means other than those provided for in -the Act.
“Except -as provided in this chapter [i.e., the Act], no employee of any employer subject to this chapter, nor the personal representative; surviving spouse, or next of kin of the employee shall have a right to any other method, form, or amount of compensation or *471 damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof.”
¶ 25-5-52.
“The rights and remedies granted in this chapter [i.e., the 'Act] to an employee shall exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent, or next of kin, at common law, by statute] or otherwise on account of injury, loss of services, or death. Except as provided -in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer’s employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment. In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to the workers’ compensation insurance carrier of the employer; to a person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers’ compensation claims for the employer; .to an officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation; to a labor union, an official, or representative thereof; to a governmental agency providing occupational safety and health services, or an employee of the agency; and to an officer, director, agent, or employee of the same employer, or his or her personal representative. Nothing in this section shall be construed to relieve a person from criminal prosecution for failure or neglect to perform a duty imposed by law.
“For the purpose of this section, a carrier, person, firm, association, trust, fund, or corporation shall include a company or a governmental agency making a safety inspection on behalf of a self-insured employer or its employees and an officer, director, agent, or employee of the company or a governmental agency-’,’ . . ■ .
§ 25-5-53.
Section 25-5-56' governs settlement of workers’ compensation claims and provides, in pertinent part:'
“The interested parties may settle all .matters of benefits, whether involving compensation, medical payments, or rehabilitation, and all questions arising under this article [i.e., Article 3, §§ 25-5-50 through -93] and Article 4 [§§ 25-5-110 through' -123] of this chapter [i.e., the Act] between themselves, and every settlement shall be in an amount the same as the amounts or bénefits’stipu-lated in this article. No settlement for an amount less than the' amounts or benefits stipulated in this article shall be valid for any purpose, unless a judge vfthe court where the claim for compensation under this chapter is entitled to be made, or wpon the written consent of the parties, a judge of the court determines that it.is for the-best interest of the employee or the employee’s dependent to accept a lesser sum and .approves the settlement. The court shall not approve any settlement unless and until it. has first made inquiry into the bona: fides of a claimant’s claim and the liability of the defendant; and if deemed advisable, the court may hold a hearing thereon.Upon settlements being approved, judgment shall be entered thereon and duly entered on the records of the court in the same manner and *472 have-the same ¡effect-as other judgments or as an award if the settlement is not for a lump sum — ”, ■
(Emphasis added.)
We note that the parties discussed the nearly identical case of Austin v. Providence Hospital, 155 So.3d 1028 (Ala.Civ.App.2014), in the hearing on the summary-judgment motions. However, as aptly noted by the trial court, this court affirmed the judgment declining to enforce a settlement agreement that had not been approved by the trial court before the death of the employee in Austin solely because the appellant in Austin had failed to raise an argument on appeal as to one of the grounds for the- summary judgment ip that case — namely, that the exclusivity provisions of the Act barred the action to enforce the contract. Thus, Austin provides no guidance in the present case.
The parties agree that the reduction of future medical'benefits, which are typically unknown and uncertain, to a lump sum is considered to be “[a] settlement for an axnount less than the. amounts or benefits stipulated in”, the Act. § 25-5-56, Thus, they also agree that the 2013 settlement agreement required court approval. That is where their agreement ends, however.
Liberty Mutual and Heil argue that § 25-5-56 clearly states that a settlement for less than the amount of benefits provided for in the Act is not “valid for any purpose” until its approval by the trial court. A noted commentator agrees: “But an unapproved settlement for an amount less than the compensation payable under the Act is not binding on the parties.” 2 Terry A; Moore, Alabama’s Workers’ Compensation § 28:8, p. 676 (2d ed.2013)(footnote omitted). Based on this contention' and’ the contention that workers’ compensation settlements are “removed ... from the ambit of the principles applicable to the settlement and release of ordinary personal injury claims,” Sager, 359 So.2d at 400, Liberty Mutual and Heil urge this court to conclude that the trial court correctly determined that the 2013 settlement agreement could not be enforced.
Tate argues that a workers’ compensation settlement is construed like any other contract, Jones, 31 So.3d at 118, and that our supreme court has determined that court approval of a settlement can be had after the death of the injured plaintiff. See Wood, 121 So.3d at 987. Thus, he contends that the trial court erred in determining that the 2013 settlement agreement could not be enforced against Liberty Mutual and Heil. He urges this court to reverse the summary judgment in their favor and to. require the trial court to consider whether to approve the settlement, agreement under the principles espoused in Wood.
Although we see the parallel-between Wood and the present case, we are not persuaded that Wood compels reversal of the summary judgment. Wood involved a minor who was injured in an automobile collision. Wood, 121 So.3d at 984. The minor and two insurers, the tortfeasor’s insurer and the minor’s underinsured-mo-torist-insurance carrier, had entered into a settlement agreement to resolve the minor’s tort claims against the tortfeasor. Id. An agreement to settle a minor’s tort claims must be approved by a trial court after a hearing to determine whether the settlement is in the best interest of the minor. See Large v. Hayes, 534 So.2d 1101, 1105 (Ala.1988). Because the minor died before the best-interest hearing, Wood, 121 So.3d at 984, the insurers argued that the settlement agreement was not enforceable. Id. at 986. However, our supreme' court explained that the settlement agreement, as a contract between a minor and the insurers, was voidable only *473 at the election of the minor and, thus, that the insurers could not unilaterally withdraw their agreement merely because the minor had died. Id. at 986. Instead, our supreme court concluded, the best-interest hearing could be held after the minor’s death. Id. at 986-87.
Section 25-5-56 specifically provides that a settlement agreement for an amount less than the amount of compensation provided for in the Act requires court approval. Thus, in that respect, the 2013 settlement agreement is like the settlement agreement between the minor and the insurers in Wood. However, unlike the settlement agreement in Wood, the 2013 settlement agreement is, by statute, not valid for any purpose until approved by the court. See § 25-5-56. Furthermore, unlike a settlement agreement involving a minor, a workers’ compensation settlement falls under the Act, and compliance with the provisions’ of the Act is mandatory.
At the time the 2013 settlement agreement was reached, Traffanstedt was complying with the Act by seeking approval of the 2013 settlement agreement under § 25-5-56. However, there is no provision in the Act permitting a personal representative to seek future medical benefits on behalf of a deceased employee. Once Traffanstedt died, there was no longer any avenue under the Act by which Tate could seek finalization of the 2013 settlement agreement. Because the exclusivity provisions of the Act preclude other causes of action seeking to. enforce rights under the Act, the declaratory-judgment and breach-of-contract action instituted by Tate was barred by §§ 25-5-52 and 25-5-53.
The trial court correctly determined that the 2013 settlement agreement was not enforceable by Tate.[1] Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Although the result may seem harsh, we are not alone in reaching this result. See Odom v. Tosco Corp., 12 Ark.App. 196, 672 S.W.2d 915 (1984) (determining that a workers' compensation settlement was not effective because the required commission approval had not been received before the death of the employee); Barncord v. State Dep’t of Transp., 4 Kan.App.2d 368, 606 P.2d 501 (1980) (deciding that a workers’ compensation settlement agreement is not valid unless it has been approved as required by statute before the death of the employee); Trahan v. Liberty Mut. Ins. Co., 188 So.2d 435 (La.Ct.App.1966)(holding that a workers compensation settlement was not enforceable because it was not approved as required by statute before the death of the employee); and Sherlin v. Liberty Mut. Ins. Co., 584 S.W.2d 455 (Tenn.1979) (concluding that a proposed workers’ compensation settlement agreement was not binding because it was not approved by the court during the lifetime, of the injured employee); but see B. Frank Joy Co. v. Isaac, 333 Md. 628, 636 A.2d 1016 (1994) (holding that, once a settlement agreement is submitted for approval by the Workers' Compensation Commission, an employer/insurer cannot withdraw consent to the agreement based upon the death of the employee);. Ferreira v. Arrow Mut. Liab. Ins. Co., 15 Mass.App.Ct. 633, 447 N.E.2d 1258 (1983) (concluding that an employer may- not unilaterally rescind a settlement agreement once' it is submitted for approval); and Rojo v. Loeper Landscaping, Inc., 107 N.M. 407, 759 P.2d 194 (1988) (determining that, onqe a settlement agreement is submitted for approval, an employer/insurer may not rescind the settlement agreement based solely upon the death of the employee).